

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00767-CV

The **HEIRS OF ANDRES GARCIA** and Francisca Menchaca; and
Carolina Allen Saenz,
Appellants

v.

Atlee M. **PARR**; Los Orcones Ranch Ltd., by and through its general partner, Los Orcones
Ranch Management LLC; and Atlee Parr, as Independent Executor of the Estate of Hilda Parr,
Appellees

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-09-325
The Honorable J. Bonner Dorsey[1], Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Sandee Bryan Marion, Justice
        Rebeca C. Martinez, Justice
        Luz Elena D. Chapa, Justice

Delivered and Filed:  August 13, 2014

AFFIRMED

This is an appeal of a take-nothing summary judgment adjudicating title to approximately

11,000 acres of real property in Duval County.  Because we conclude appellants failed to produce

evidence that they hold title to any part of the property at issue, we affirm the trial court's judgment.

---

[1] Sitting by assignment.

## FACTUAL AND PROCEDURAL BACKGROUND

The property in dispute is part of a land grant awarded by Mexico to Andres Garcia in 1836 and then patented by the State of Texas to the Heirs of Andres Garcia in 1877.[2] The parties agree the property passed to Andres Garcia's surviving children through intestacy. The parties also agree that the interest in the property inherited by Andres Garcia's son Rafael passed to Rafael's children through intestacy.

This suit concerns the interest in the San Andres grant inherited by Rafael's daughter Trinidad Garcia Menchaca. Trinidad had only one child who survived her—Francisca Menchaca Allen. Appellants contend they are descendants of Francisca Menchaca Allen and have inherited undivided fee interests in the San Andres grant through intestate succession. In this suit, appellants assert an undivided fee interest in approximately 11,000 acres[3] out of the San Andres grant. Appellees, Atlee M. Parr, Los Orcones Ranch Ltd., and Atlee Parr, as Independent Executor of the Estate of Hilda Parr, Deceased, (collectively referred to as "the Parrs"), deny appellants own any interest in the property. The Parrs contend that, together, they hold fee title to the surface and minerals on a total of 9,000 of the acres at issue and hold title to the minerals on 2,000 acres.[4]

The Parrs contend that all of Rafael's children, including Trinidad, conveyed their inherited interests in the San Andres grant to one of their cousins on or before March 5, 1887. On March 5, 1887, the heirs of Andres Garcia or their assignees partitioned the 21,849 acre grant. The partition deed recites that Rafael was deceased and that his heirs had assigned their cumulative 1/6 interest in the grant they inherited from Rafael to Camilo Garcia Ramirez. According to the Parrs, Archer

---

[2] The entirety of the land grant is referred to by the parties and in historical documents as the "San Andres grant."
[3] For ease of reference, in this opinion we use round numbers to describe the acreage. A complete description of the property by acreage and metes and bounds is attached to and made part of the trial court's judgment.
[4] The Duval County deed records reflect that Hilda Parr conveyed the surface of these 2,000 acres in 1999 to entities that were not made parties to this suit.

Parr (appellee Atlee Parr's grandfather) acquired title to over 13,600 acres of the partitioned property through a serious of purchases between 1893 and 1899 that are evidenced by recorded deeds. The property changed hands several times thereafter, but the Parrs contend public records reflect that by 1918 the Parr family again owned the entire 13,600 acres. The Parrs assert that approximately 2,600 acres were conveyed by deed to George B. Parr in 1935, and the remaining 11,000 acres were deeded to appellant Atlee Parr's father in 1935.[5] This is the 11,000 acres adjudicated in the judgment by the trial court in this case. Documents in the record have used "Los Orcones Ranch" to refer to the entire 13,600 acres originally claimed by Archer Parr and to various parts of that acreage. As used herein, "Los Orcones Ranch" refers to the 11,000 acres described in the trial court's judgment.

Appellants contend that Archer Parr's claim to the property was the result of a series of fraudulent or forged conveyances, including Trinidad's purported conveyance of her undivided interest in the San Andres grant and the 1887 partition deed. Appellants contend that Trinidad did not convey her inherited interest in the property and that she lived on Los Orcones Ranch with her husband, raised her family there, died and was buried there. They assert that Trinidad's child, Francisca, inherited Trinidad's interest in the property. Francisca married O.G. Allen in the 1890s and settled on the inherited land, where they raised their children. According to appellants, Archer Parr's first actual presence on the land was in the early 1900s, when he and his wife (who was O.G. Allen's sister) asked the Allens for permission to stay awhile. According to family lore, Francisca allowed them to do so because they appeared to need a place to stay. Appellants assert that the Parrs moved away from Los Orcones Ranch but later returned, and that in 1935, Archer

---

[5] The first oil and gas lease on Los Orcones Ranch was also executed in 1935.

Parr's grown son George Parr forcibly removed Francisca, her husband, and several of their children from their family home on Los Orcones Ranch.

In 1993, many of the appellants, alleging to be the "Heirs of Francisca Menchaca Allen," filed a trespass to try title suit against Hilda Parr (appellee Atlee Parr's mother), seeking a judgment for title to and possession of the same 11,000 acres that are the subject of this case. Hilda Parr filed counterclaims for slander of title, tortious interference with contract and business relations, infliction of emotional distress, frivolous lawsuit, and to quiet title. In December 1998, a notice of nonsuit was filed on behalf of most of the plaintiffs and intervenors in that lawsuit, and an interlocutory summary judgment was rendered against plaintiff Peter O. Barton. The rest of the case, which included Hilda Parr's counterclaims, was dismissed for want of prosecution in February 2005.

Plaintiffs from the 1993 suit filed this action in September 2009, alleging to be "The Heirs of Andres Garcia and Francisca Menchaca" (hereafter referred to as "the Garcias"). The action was filed against Atlee Parr and the Heirs of Hilda Parr as a bill of review, seeking to set aside the summary judgment and dismissal order in the earlier suit, and alternatively pleaded claims for trespass to try title, accounting, and fraudulent transfer. Atlee Parr, as Independent Executor of the Estate of Hilda Parr, and Los Orcones Ranch, Ltd., by and through its general partner, Los Orcones Ranch Management, L.L.C., intervened as party defendants, alleging they held record title to some of the property at issue in the suit.[6]

---

[6] The Garcias' second amended petition additionally lists the Atlee Martin Parr Protection Trust and Los Orcones Ranch Management, L.L.C. as party defendants. However, the record does not reflect service upon or an appearance by either of these entities. The Garcias' brief on appeal also lists Ranch Enterprises L.L.C. as an appellee in the case. This entity likewise was not served and did not enter an appearance in the case.

In May 2010, after an evidentiary hearing, the trial court denied the Garcias' bill of review and granted the Parrs' motion for partial summary judgment. While the Garcias' motion for rehearing was pending, Carolina Allen Saenz intervened as a party plaintiff, alleging she is also a descendant and heir of Francisca. Saenz's pleading alleged trespass to try title, a suit to quiet title, and a claim for an accounting. The trial court subsequently granted Saenz leave to intervene, granted the motion for rehearing of the motion for summary judgment, and denied the motion for rehearing on the bill of review.

The Parrs filed a second motion for summary judgment, alleging both traditional and no-evidence grounds. In their traditional motion, the Parrs asserted the Garcias and Saenz could not prevail on their claims because the evidence conclusively established (1) Francisca did not have any descendible title or interest in the property, (2) the Parrs hold legal title to the surface and minerals by virtue of a regular chain of conveyances from the sovereign, and (3) alternatively, the Parrs have superior title to Los Orcones Ranch by adverse possession under the three, five, ten, and twenty-five year statutes of limitation. The Parrs' no-evidence motion asserted they were entitled to judgment on the Garcias' and Saenz's claims because there is (1) no evidence the Garcias or Saenz hold title to any part of Los Orcones Ranch and (2) no evidence that any conveyance, deed or other instrument in the Parr chain of title is not valid. All parties filed numerous objections to the summary judgment evidence, and the Garcias filed a motion to compel discovery. After several hearings, the trial court overruled all parties' objections, denied the motion to compel, and granted the motion for summary judgment in its entirety. The trial court

rendered a take-nothing judgment against the Garcias and Saenz[7] and expressly disposed of all parties and issues in the case.

Appellants complain the trial court erred by granting summary judgment, overruling their objections to summary judgment evidence, denying the motion to compel discovery, denying the bill of review, and by allowing the Parrs to supplement their abstract of title. The Parrs raise cross-points complaining of the trial court's failure to exclude some of the Garcias' and Saenz's summary judgment evidence.

### SUMMARY JUDGMENT

Appellants' briefs principally argue the trial court improperly granted the Parrs' traditional motion for summary judgment, which asserted appellants could not recover because the Parrs conclusively established their title to the surface and minerals on Los Orcones Ranch through a regular chain of conveyances to the sovereign, or alternatively through adverse possession. However, the trial court granted summary judgment on all grounds, including the Parrs' no-evidence ground that appellants have no evidence they hold title to any portion of the Los Orcones Ranch within the San Andres grant. Because the trial court did not specify a ground for its ruling, the Garcias and Saenz bear the burden of showing each ground alleged in the Parrs' motion is insufficient to support the trial court's summary judgment. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). We first review the no-evidence summary judgment, and if appellants failed to produce more than a scintilla of evidence, we do not need to analyze whether the Parrs' proof satisfied their burden to show superior title.

---

[7] A judgment in a trespass to try title suit that plaintiffs take nothing divests them of title and vests same in the defendants. *Hejl v. Wirth*, 343 S.W.2d 226, 227 (Tex. 1961); *Knight v. Chicago Corp.*, 144 Tex. 98, 106, 188 S.W.2d 564, 568 (1945).

We review a summary judgment de novo. *Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In a no-evidence motion for summary judgment filed under Texas Rule of Civil Procedure 166a(i), the movant must challenge the evidentiary support for a specific element of a claim or defense after an adequate time for discovery. TEX. R. CIV. P. 166a(i) cmt. (1997). If the motion complies with the rule, the burden shifts to the respondent to produce summary judgment evidence that raises a genuine issue of material fact on the challenged element. TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ridgway*, 135 S.W.3d at 600.

The first ground of the Parrs' no-evidence motion for summary judgment alleged that to prevail on their claims, the Garcias and Saenz have the burden of proving that they hold some title in the property at issue. The Parrs contended appellants have no evidence that they hold title to any portion, surface or minerals, of Los Orcones Ranch. Neither the Garcias nor Saenz substantively responded to this no-evidence ground in the trial court. However, Saenz asserted that the motion was insufficient to shift the burden to her to produce evidence because it did not identify a specific element of any claim on which she had the burden of proof.

On appeal, the Garcias' brief does not directly challenge the trial court's grant of the no-evidence motion for summary judgment and does not include a general assignment that the trial court erred in granting summary judgment. "Unless an appellant has specifically challenged every possible ground for summary judgment, the appellate court need not review the merits of the challenged ground and may affirm on an unchallenged ground." *Krueger v. Atascosa Cnty.*, 155 S.W.3d 614, 621 (Tex. App.—San Antonio 2004, no pet.); *see Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). Saenz argues on appeal that the Parrs' no-evidence motion was

insufficient as a matter of law and argues alternatively that the summary judgment evidence raised a genuine issue of material fact.

### *Sufficiency of the motion*

A party may move for a no-evidence summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). The motion "must state the elements as to which there is no evidence." *Id.*

Saenz contends the Parrs' assertion in the motion for summary judgment that appellants have "no evidence . . . that they hold title to any portion, surface or minerals, of the Los Orcones Ranch" is too conclusory to comply with Rule 166a(i) and shift the burden of proof. Saenz asserts that there are four ways that a plaintiff in a trespass to try title suit may prove title and the motion was insufficient because it did not identify which of "these elements" Saenz is unable to establish. *See Plumb v. Stuessy*, 617 S.W.2d 667, 668 (Tex. 1981) (plaintiff in trespass to try title suit may establish valid title in one of four different ways). We disagree.

In a trespass to try title action, "the burden of proof is on plaintiff to establish a superior title in himself by an affirmative showing." *Doria v. Suchowolski*, 531 S.W.2d 360, 362 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.). The "element" a plaintiff must prove in a trespass to try title action is the title he claims in the disputed property. The Parrs correctly stated in the no-evidence motion that Texas Rule of Civil Procedure 783 required appellants to allege the title or interest claimed in the property—fee simple or other estate or the nature and amount of any undivided interest—and that the statutory cause of action required appellants to prove their own title. *See Vernon v. Perrien*, 390 S.W.3d 47, 54 (Tex. App.—El Paso 2012, pet. denied) ("To maintain an action of trespass to try title, the person bringing the suit must have title to the land

sought to be recovered" and "plaintiff's right to recover depends on the strength of his or her own title, not the weaknesses of the title of his or her adversary."); TEX. PROP. CODE ANN. § 22.002 (West 2000) (evidence of legal right to located and surveyed land required to maintain trespass to try title action); TEX. R. CIV. P. 783 (stating requirements of petition in trespass to try title case). The alternative means or grounds a plaintiff may use to prove the element of title are not themselves "elements" of a trespass to try title action.

Because the Parrs clearly specified the element of appellants' claims for trespass to try title and accounting for which they allegedly had no evidence, the motion complied with Rule 166a(i) and was sufficient to warrant a no-evidence summary judgment on those claims. *See Lucio v. John G. and Marie Stella Kenedy Mem'l Found.*, 298 S.W.3d 663, 672 (Tex. App.—Corpus Christi 2009, pet. denied); *Abete v. Texaco, Inc.*, No. 04-00-00057-CV, 2002 WL 54128, at *1-2 (Tex. App.—San Antonio Jan. 16, 2002, pet. denied) (not designated for publication). To avoid summary judgment, appellants were required to bring forward evidence of title sufficient to create a fact issue on one of the accepted grounds for proving title. The Garcias neither responded substantively to the no-evidence motion for summary judgment in the trial court nor challenged that ground for judgment on appeal. Accordingly, we affirm the summary judgment against the Garcias on the ground that they produced no evidence they have any title in Los Orcones Ranch. *See Lucio*, 298 S.W.3d at 672 (holding where motion complied with Rule 166a(i), but no response to no-evidence motion was filed, trial court was required to grant motion and render judgment in favor of movants); *Malooly*, 461 S.W.2d at 121 (holding appellate court must affirm summary judgment that may have been based on ground not challenged by specific point or by general assignment that the trial court erred in granting summary judgment).

*Evidence of title through intestate succession*

Although Saenz did not substantively respond to the no-evidence motion in the trial court, she argues on appeal that there is "ample" summary judgment evidence demonstrating her title by virtue of being an heir of Andres Garcia and Francisca Menchaca.

Proof of title transferred through intestate succession is a valid method of establishing title. *See Abete*, 2002 WL 54128, at *1; *Smith v. Lynn*, 152 S.W.2d 838, 839-40 (Tex. Civ. App.—San Antonio 1941, no writ). In order to defeat the no-evidence motion for summary judgment, Saenz must point to summary judgment evidence that at least raises a question of fact with respect to each transfer necessary to show her title. Thus, for each generation, Saenz must show there is more than a scintilla of probative evidence that an interest in the property was owned at death, that the person died intestate, and the identity of those to whom the property passed under the laws of descent and distribution. *See Abete*, 2002 WL 54128, at *2; *Smith*, 152 S.W.2d at 840; *see also* TEX. ESTATES CODE § 201.001, *et seq.* (West 2014).

Saenz initially appears to contend she had no burden to show heirship, asserting that the Parrs "have never contested Ms. Saenz's status as an heir of both Andres Garcia and Francisca Menchaca." We disagree. The Parrs contested any claim that Saenz owned an interest in Los Orcones Ranch through intestate succession by contesting the trespass to try title action and by filing a motion asserting that she had no evidence of any title or interest in the property. The Parrs did not concede or stipulate that Saenz or any of the Garcias are "heirs" of Andres Garcia and Francisca Menchaca. *See* TEX. ESTATES CODE ANN. § 22.015 (West 2014) ("'Heir' means a person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate. The term includes the decedent's surviving spouse."). Moreover, throughout the motion for summary judgment the Parrs refer to appellants as the "alleged heirs" of Andres

Garcia and Francisca Menchaca and to appellants' claims as being based on "their alleged status as heirs."

The summary judgment evidence is undisputed that the original 21,839 acres comprising the San Andres Grant was awarded by Mexico to Andres Garcia in 1836 and then patented by the State of Texas to the Heirs of Andres Garcia in 1877. The evidence also establishes that undivided interests in the grant passed to Andres Garcia's six[8] surviving children through intestacy, and that the interest in the property belonging to Andres Garcia's son Rafael passed to Rafael's six children through intestacy. The record thus establishes that Rafael's daughter, Trinidad, inherited an undivided interest in the San Andres Grant, including the 11,000 acres at issue in this case that comprise Los Orcones Ranch. The parties dispute whether Trinidad owned any interest in the property at the time of her death.

The Parrs argue that one of their summary judgment exhibits, purporting to be a copy of an 1883 deed conveying Trinidad's inherited undivided interest in the San Andres Grant to her brother, establishes that she did not own any interest in the property at death. However, we agree with appellants that the trial court should have sustained their objection to the document because it was not authenticated.

We have obtained and reviewed the original summary judgment exhibits from the district clerk. The exhibit is a two-page document. The pages appear to have been stapled at one time, but are not now bound to each other. The second page of the exhibit bears the raised seal of Duval County. On the back of the second page also appears an ink stamp of the County Clerk's seal and an attestation signed by the County Clerk that "This instrument is a true and correct copy of the

---

[8] Appellants' briefs assert Andres Garcia had seven surviving children; however, there is no summary judgment evidence to support the assertion.

original on file of record in my office." The attestation does not indicate the number of pages in the instrument. The second page of the exhibit contains a page number, and the words "San Diego Duval County Texas, Monday 4th June A.D. 1883" are written across the top. However, the first page of the exhibit does not bear a seal, stamp, attestation, or clerk's signature on either the front or the back of the page. It appears to be part of a deed and recites that the grantor is Trinidad Menchaca. However, only the top half of the page contains writing; the bottom half of the page is blank, and it appears to be an incomplete photocopy of a page from an unidentified source. This page of the exhibit contains no volume number, page number, date, or other indication of its source.

The county clerk's certificate is what signifies that a copy of a document is an exact duplicate of the original found in the county clerk's records. Tex. Att'y Gen. Op. No. GA-0404 (2006). A properly certified copy of a recorded deed is self-authenticated. TEX. R. EVID. 902(4). Under Texas law, a document bears the county clerk's certificate if the county seal and the county clerk's signature have been placed on each page of the document. *See* TEX. LOC. GOV'T CODE ANN. §§ 118.014, .060 (West 2008); Tex. Att'y Gen. Op. No. GA-0404 (2006). The two-page exhibit purporting to be Trinidad Menchaca's deed is not a certified document because the clerk's seal and signature do not appear on each page, and it is therefore not self-authenticated. However, the requirement that evidence be authenticated may be "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Here, there is nothing in the record indicating that the first page of the exhibit is a true copy of the first page of an 1883 deed executed by Trinidad Menchaca or of a recorded copy of the first page of such a deed. Because there is no evidence from which it can reasonably be inferred that the first page of the exhibit is what it purports to be, the trial court abused its discretion in overruling appellants' objection to the exhibit. We therefore review the remainder of the record for evidence

that Trinidad owned an interest in Los Orcones Ranch at her death that passed to her heirs by intestacy.

The summary judgment record contains affidavits of two of the Garcia plaintiffs – O.G. Barton and Emma Barton. The affiants establish they are both great-grandchildren of Trinidad. O.G. Barton testified that Trinidad and her husband, Colonel Jose Maria Menchaca, lived on Los Orcones Ranch and are buried on the Ranch in a small cemetery with marked tombstones. Affiants state that Trinidad had only two children—a daughter who died young and Francisca. O.G. Barton's affidavit states that Francisca "inherited the property from her mother Trinidad Garcia," and Emma Barton's affidavit states that her grandmother Francisca told her that she had inherited Los Orcones Ranch from her mother, Trinidad Garcia, and that it was part of the San Andres grant. This is some evidence from which it could reasonably be inferred that Trinidad owned an interest in Los Orcones Ranch at the time of her death, that she died intestate, and that her interest in the property passed to her daughter Francisca by intestate succession.[9]

However, the appellants' evidence of intestate succession stops with Francisca, who died in 1954. Appellants' summary judgment affidavits establish that Francisca and her husband O.G. Allen had six children, the oldest of whom was the mother of the two affiants. But the record contains no evidence of whether Francisca owned any interest in the property at the time of her death, whether she died testate or intestate, when her spouse died, or who her heirs were. Likewise, there is no summary judgment evidence of whether Francisca's children owned any interest in the property at the time of their deaths, whether any of them were married, whether they died testate or intestate, who they were survived by, or the contents of their wills, if any. Finally, with the

---

[9] In cross points, the Parrs assert the trial court erred by overruling their numerous objections to the affidavits. Because we conclude the trial court did not err in granting the no-evidence summary judgment, we need not address the cross points.

exception of affiants O.G. Barton and Emma Barton, appellants did not submit any summary judgment evidence that they are Francisca's descendants.[10]

In conclusion, the Parrs' motion for summary judgment that the Garcias and Saenz could show no evidence they have any title or interest in any part of the surface or minerals of Los Orcones Ranch complied with the requirements of Rule 166a(i). None of the appellants substantively responded to that ground for summary judgment in the trial court and the Garcias failed to challenge that independent ground supporting the judgment on appeal. We overrule Saenz's contention on appeal that the summary judgment record contains sufficient evidence to create a fact question on the issue of whether appellants "maintained ownership over the entire Los Orcones Ranch by virtue of the laws of intestacy." We therefore affirm the trial court's summary judgment that the Garcias and Saenz take nothing on their trespass to try title and accounting claims against the Parrs.

### OTHER CAUSES OF ACTION

In a final sub-point, Saenz contends the trial court erred in rendering a judgment disposing of her claim for accounting and her suit to quiet title because the Parrs' motion for summary judgment was directed solely at the trespass to try title claim.[11] We disagree with the contention that the motion was not directed to Saenz's claim for accounting. The no-evidence motion for summary judgment expressly asserted that appellants could "not prevail on their trespass to try title claim or their claim for an accounting and damages" because they could produce no evidence they hold title to any of the property. However, Saenz is correct that although the motion for

---

[10] The appellants' briefs cite to "family trees" that were attached to the Garcias' petition and Saenz's plea in intervention. However, neither of the "family trees" was sworn, verified, or submitted as summary judgment evidence.

[11] The Garcias do not complain on appeal that the trial court erred by rendering judgment on any of their claims not addressed in the motion for summary judgment. *See Ontiveros v. Flores*, 218 S.W.3d 70, 71 (Tex. 2007) (per curiam) (appellant who fails to complain on appeal about claims on which summary judgment was granted waives any error as to the unchallenged claims).

summary judgment requested judgment on all of appellants' claims, the motion did not expressly refer to Saenz's suit to quiet title.

As a general rule, granting a summary judgment on a claim not addressed in the summary judgment motion is error. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). However, under the harmless error rule, we may not reverse a judgment because of an error of law unless we find "the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause 'the rendition of an improper judgment,' or that the error 'probably prevented the appellant from properly presenting the case [on appeal].'" *Id.* (quoting TEX. R. APP. P. 44.1(a)). Thus, "[a]lthough a trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion, . . . the error is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *Id.* at 297-98.

As we held above, appellants failed to produce any evidence that they have title to any of the surface or minerals of Los Orcones Ranch and the trial court did not err in rendering a take-nothing judgment on appellants' trespass to try title claim. That judgment has the effect of divesting appellants of any title in the property and vesting it in the defendants. *See Hejl v. Wirth*, 343 S.W.2d 226, 227 (Tex. 1961); *Knight v. Chicago Corp.*, 188 S.W.2d 564, 568 (Tex. 1945).

A plaintiff in a suit to quiet title has the burden to establish as an element of her claim that she owns an interest in specific property. *Montenegro v. Ocwen Loan Servicing,* LLC, 419 S.W.3d 561, 572 (Tex. App.—Amarillo 2013, pet. denied). The take nothing judgment against Saenz on her trespass to try title action conclusively forecloses her from establishing that element of a suit to quiet title. Lacking any title, Saenz's suit to quiet title would fail as a matter of law. Therefore,

any error by the trial court in rendering judgment on the suit to quiet title is harmless. *See G& H Towing*, 347 S.W.3d at 297-98.

## MOTION TO COMPEL DISCOVERY

The Garcias argue the trial court abused its discretion in denying their motion to compel discovery responses. They argue the Parrs' responses to requests for production were inadequate because most of the responses simply referred to the abstracts of title and the Parrs' summary judgment exhibits rather than being organized, labelled, and produced to correspond to specific requests. Both the motion and the Garcias' brief assert that the documents requested were necessary to refute the Parrs' claims that they have superior title to the property, either through a chain of regular conveyances or by adverse possession. Neither the motion to compel nor the brief assert that any of the documents sought but not produced relate to appellants' own claim of title. Because we affirm the trial court's judgment based on appellants' failure to produce evidence to support their own claim of title, there is no error of law that probably caused the rendition of an improper judgment or probably prevented appellants from properly presenting their case to this court. *See* TEX. R. APP. P. 44.1(a). Accordingly, any error is harmless as a matter of law.

## AMENDING ABSTRACT OF TITLE

The Garcias also argue the trial court erred by allowing the Parrs to supplement their abstract of title. The Parrs filed their original abstract of title in September 2011. On February 28, 2012, they filed an amended abstract and a motion for leave to amend. The trial court subsequently granted the motion for leave.

Rule 794 of the Texas Rules of Civil Procedure provides that the court may allow either party to file an amended abstract of title under the same rules applicable to the amendment of pleadings. TEX. R. CIV. P. 794. As a general rule, the Parrs could amend their pleadings without

leave of court unless they did so within seven days of trial or after the deadline imposed by a docket control order. *See* TEX. R. CIV. P. 63. The docket control order in this case allowed the Parrs to amend their pleadings until April 13, 2012, and the amended abstract was filed two months before the summary judgment hearing. Because the amendment was timely filed and the Garcias made no showing, either in the trial court or on appeal, that they were unfairly surprised by the amendment, the trial court did not err by allowing the amendment.

## BILL OF REVIEW

Finally, appellants challenge the trial court's order denying their bill of review. Had the bill of review been granted, the original suit, alleging the same claims, would have been reinstated. The practical effect of the trial court's ruling was to enable the Parrs to argue that their peaceable possession of Los Orcones Ranch did not end until this action was filed on October 19, 2009, rather than in 1993, when the first suit was filed. The trial court's ruling on the bill of review had no effect on the disposition of the Parrs' no-evidence motion for summary judgment, either in the trial court or on appeal. We therefore need not decide whether the ruling was correct.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.


Luz Elena D. Chapa, Justice